Chomp Chomp Mr. Dre are you there? Yes. There you are. Okay. Just sitting down. Sorry. No problem. Welcome aboard. Our third case this morning is 20-1274 Rempro versus Champion Pet Foods. And for the appellant, Mr. Wexler, you may proceed. Thank you, your honor. May it please the court. My name is Ken Wexler. I'm here on behalf of the appellants. This is an appeal from an 11-page dismissal order dismissing a 295-paragraph complaint alleging defendants' misleading packaging claims were intended to and successfully induced consumers to not only purchase their dog food but to pay premium prices for it. The district court's decision should be reversed. The court failed to conduct the correct analysis under Iqbal. It failed to apply the Colorado Consumer Protection Act law as it relates to material misrepresentations. Failed to apply the law as it relates to puffery and whether or not it can be actionable. And failed to consider the fact that omissions do not need to be tied to specific misrepresentations to be actionable. With regard to Iqbal, which I mentioned, the court there was clear that for a complaint to state a plausible claim for relief, the district court can be encouraged to apply common sense and experience, but only in the context of what is pled. And if you look at the law surrounding the Colorado Consumer Protection Act, the issue is not one of falsity, but falsity is defined as something that has a tendency to mislead or can create a misimpression in one's mind. Now, in our 295-paragraph complaint, we devote 120 paragraphs at the appendix of 35 to 54 to explaining why the statements that Judge Domenico found could not be false or misleading. Well, you focus on four packaging statements principally, and just to clear away some of the debris, at least in my mind, two of trusted everywhere ingredients we love. I think the district court found that was bagged generalities puffery. And do those really, would those really be misleading or deceptive to a reasonable purchaser of dog food? Well, that's a great question. And it's frankly the gist of our position. The statement in isolation, one could analyze it as puffery. Trusted everywhere, I concede, by itself could be puffery. But trusted everywhere was embedded with a barrage of other statements that created the impression that people were buying really good dog food and therefore they should pay a lot of attention to the packaging. No different than putting on pictures and the packages. And I suggest the court, I'll get the citation, but if you look at the packages attached to the complaint as Exhibit 1, you can see it isn't just a trusted everywhere statement. It's not a slogan. It's part of a message that it's trusted everywhere with ingredients made from people we trust. Something which, by the way, on its own would be verifiable. But that the ingredients are fresh and regional. They put pictures of featured farmers on the packages to show that it's almost a farm-to-table dog food. Ingredients made from people we trust is verifiable? And how is that verifiable? Who's the judgment about who's trustworthy? Two answers to that question. I suppose there could be an email and discovery that says we don't really know these people, but they're cheaper. Okay, so the people we trust can be verifiable. But the main point is that the court can be verified. Yes, but the main point is that the court can be verifiable. Yes, but the main point is that the court can't just go in and parse the words like a district judge can. They don't have the time to do that. And I recommend the Bell decision recently out of the Seventh Circuit, which actually recognizes what reasonable consumers actually do when they go down the aisle. Well, what's... So those two statements, trusted everywhere and ingredients we love, would you say they're probably puffery, but they're saved because contextually they're included with the rest of the packaging? You don't have to say necessarily, but tell me what it is. I think it's a matter of degree, but I think trusted everywhere probably on its own is puffery, but not in the context. The second statement I think has verifiable aspects to it, but again, in context, in the appendix 35 to 54, where we talk about the overall misleading messaging that is provided by Champion. I don't... Let's sort of biologically appropriate. I don't have dogs, but I have clerks that have and love dogs, but I'm still trying to biologically appropriate means. And in reading your complaint, it's a little unclear to me, is that as I read at least your... As I interpret it, you're saying that to some extent, they were selling adulterated dog food or potentially adulterated dog food because they can't. Can you explain to me the thrust of this, of the deceptiveness of biologically appropriate? First, what's it mean? And then how do you allege that they've fallen short in their messaging to consumers? Sure. They define biologically appropriate in their motion to dismiss the appendix at paragraph 119, I'm sorry, page 119 to 120. As biologically appropriate means that Champion's diets, quote, mirror the richness, freshness, and variety of whole prey meats that dogs are evolved to eat and is protein rich and carbohydrate limited. All of those are facts. All of those can be determined whether or not that's true. What we allege in the complaint is that in addition that number one, and this is why it's important to read those paragraphs of the second amendment complaint, because these are all interconnected. Fresh and regional, which reinforces that notion of biologically appropriate. When in fact, fresh ingredients, while Judge Domenico said, they're not all fresh, it doesn't say they're all fresh. There's 13 pounds and 11 pounds are fresh, so the others are non-fresh. There's no disclosure of what the non-fresh ingredients consist of. What we allege is they consist in large part of what are called regrinds, which not only have no nutritional value, but have negative nutritional value. They don't pass tests. It's old food that's reground and reused that they didn't sell because it didn't meet standards. Now, these are things that a consumer would want to know. Well, what is in the non-fresh ingredients? Not just that there are non-fresh ingredients, but what's in them? Is this a dry dog food? Yes. I think it says on the packaging it's produced or it's made in factories, kitchens in Kentucky and Wisconsin. It has at least the protein parts of it are basically sourced from not just Kentucky or Wisconsin, but fish from New England and lamb from New Zealand. If a consumer were looking at the labels, would a reasonable consume really be misled by this locavore, farm-to-table language when you look at contextually what the ingredients are? I think a jury can make that decision. I think that's for the jury. It's not for a motion to dismiss. This is where Judge DeMonaco failed. He did not take our allegations as true. Because you use the word fresh and regional, the fact that it contains part lamb from New Zealand is basically a jury question? Whether it's fresh and regional, it might be, but what Your Honor is reciting back isn't necessarily what's on the packaging. In fact, that's a great example with the lamb. In the second amendment complaint, paragraph 114, the appendix discusses this at 44 to 46. They advertise that a small family-owned local farmer, they call it their lamb-featured farmer, was the, quote, trusted supplier of fresh grass-fed Suffolk lamb located in Russellville, Kentucky, when in fact the majority of the lamb came from New Zealand. It's not disclosed that it was sourced elsewhere. The picture that's painted is that it came from down the street, from your local farmer, which reinforces the concept of fresh, reinforces the concept of regional, reinforces the message that they're trying to make. And again, puffery is actionable. If it's intended to be conveyed as fact, it is considered a statement of fact. You know, the district court on that, on the fresh and regional part, I think honed in on the phrase's focus on local and expression of our commitment. And, you know, for your purpose of your argument, you're kind of stirring us to a more literal interpretation of fresh and regional. What do we do about those other kind of statements that you might see on a TV ad? Yeah. I apologize for interrupting. I feel very strongly about this. Two things. First of all, when the judge discusses fresh and regional, he's taking an example from a section of our complaint that is not talking about fresh and regional. It's talking about trusted everywhere. That's number one. That's number two. We're not saying focus is actionable. We're not saying levels are actionable. We're saying the message is actionable. And I would direct the court to Colorado Sky Industry Supply versus Easy Street, Francis versus me, Johnson. Anything that creates an unsure, misleading impression in the mind of another is a false statement under Colorado law. Yeah, go ahead. Let me try to understand this and specifically focusing on biologically appropriate and fresh and regional there. There's nowhere where where they indicate in their packaging that 100 percent of their product is biologically appropriate or 100 percent of their project is a product is fresh and regional. Therefore, it seems to me that in order to establish that it is misleading, that is false, one has to have some baseline of what a reasonable consumer would expect. And and at least based upon my review of the complaint, I didn't see any baseline of what percentage of biologically appropriate a reasonable consumer would expect or what percentage of biologic of fresh and regional regional reasonable consumer would expect. Number one, am I right about the absence of such a defined baseline in the complaint? And number two, if there isn't such a defined baseline, what's the implication of that on the question of whether this is misleading or not? There is no defined baseline, as your honor points out. But the implication of that is that the court is focused on the wrong thing, because that's why we had alleged one thing that is omitted. I mean, a reasonable consumer, a separate claim. No, a reasonable consumer would not expect that the non-fresh ingredients would be harmful to their pet. Well, I thought I thought that was off the table. I thought you indicated in your brief that we're not talking about whether this harmed your pet. We're talking about whether this was adulterated in the sense that it had stuff that was not nutritious. Are you claiming that their product is harmful to your pet? It's not a personal injury case to pets. It's that a reasonable consumer looking at that message would not expect non-fresh ingredients to not be biologically appropriate or to contain regrinds or other non-nutritional ingredients. Well, I didn't even know what regrinds were before I read your brief. And so and I think I'm fairly reasonable. So why would I be misled by learning that there are regrinds in there when I didn't even know what regrinds were? So the point I make is in terms of the things that are in it, but more to the point, how can I form a if I don't have a baseline, how can I be misled? If they are guaranteeing me it's 100 percent, then how can I be misled? By not knowing what regrinds were. You did not know what regrinds were until you read our brief because it's not disclosed what regrinds are on the package. So how can a consumer be misled? By not knowing what's in the package. Regrinds are non-nutritious. They are old. They fail every test imaginable for nutrition. And yet they're in the food. So whether there's a percentage that of that there is the baseline becomes irrelevant. It's a consumer entrapment case. This is the CCPA is intended to wreck to protect consumers. And I know from page seven of his opinion, if 99.9 percent of the material in there was biologically appropriate and fresh and regional, you're telling me you can make a claim because the baseline is irrelevant because I'm shocked that this additional percentage was not fresh and regional or this additional percentage was not biologically appropriate. You're telling me there'd be a basis for a claim of misleading? We allege that in I believe it's 2017 or 2018 that 5.8 percent of the origin ingredients were regrinds. That's what you're telling me. You're not telling me what a reasonable consumer would expect. I think a reasonable consumer would expect to be told when they're paying $90 for a bag of dog food that the dog food contains ingredients that they might not want their dog to have. That's what I'm saying. And I know I've gone way over my time and I apologize. Yeah well let's hear let's hear from champion Mr. Dre. Good morning and may it please the court. I'm Dominic Dre and I represent the Appellee Champion Pet Foods. Plaintiffs allege that various statements are either false or misleading. In the false category you have actually just one statement which concerns a supplier shipment of barbitol. But plaintiffs did not buy any dog food affected with that tallow. Let me interrupt you there because as I read the second amended complaint I think a fair inference is what they're alleging is that the purchase of beef tallow that was contaminated was going on for a long time before Champion ever tested to confirm it. And even though they can't show that they purchased after it was confirmed and before it was pulled that they have a reasonable belief on information and belief that they can find during the time they were purchasing dog food. That's how I read their complaint. That somewhat charitable reading of their complaint is a negligence cause of action. That's not a false advertising cause of action. So if they want to claim that their dog ate some harmful pentobarbital then so be it. But they've taken an easier path or they've attempted to take an easier path by not alleging that any dogs actually got sick or they bought. In fact they didn't even allege that they bought a bag tainted with pentobarbital. So the only claim is that somehow saying that the food was biologically appropriate because some dog food that they didn't buy some other people's dog food might have had some pentobarbital in it is just insufficient for scanning. And actually that has been the case. So have held courts from sea to shining sea. I mean the Song, Kalanchelos, Zarinaboff, all these cases. This case is one in a wide net from the plaintiff's bar to try and sue Champion over its premium dog foods. And all of those have found no standing on this exact issue. As for the claims. What do we do about. I mean I guess their claim is that you're selling adulterated dog food and you don't you don't have a system to appropriate quality control system and a reasonable consumer based on the packaging would assume that they're getting non adulterated nutritious dog food and that may not be the case. Right. So again this is a false advertising claim. So the other side would have to establish or excuse me allege somehow that a reasonable consumer would read the two words biologically appropriate and infer from those words a testing protocol for pentobarbital and measuring. I don't agree with that. I don't think it has to assume a testing protocol. That's literally what they allege. Well it has to. If you look at biologically appropriate I'm going to the store and I'm spending ninety dollars a bag because I want to buy my pet the best food and you're telling me yours is biologically appropriate because it nourishes as nature intended mirroring the richness freshness and variety of whole prey meats dogs are evolved to eat. I really would not. I think I would be reasonable in believing that you're not including in that food substances that like pentobarbital or that you're not including regrinds that include food that was rejected as being too stale or not biologically acceptable that had been rejected rejected food or outdated food. I don't I think that you can reasonably as a consumer believe that wouldn't be in there based on what you're telling him on these bags that I'm looking at here. So so let me make a couple of responses on that your honor because there are I think a number of points baked into that question. The first concerning biologically appropriate it's worth noting that the only thing that is preserved on that is pentobarbital and this you can see the other side's opposition to our motion to dismiss on biologically appropriate. This is at page 173 through 175 of the appendix only contest the pentobarbital point all the rest of it about what it means for food to be biologically appropriate like protein rich and carbohydrate limited and whole prey and all that. None of that do they contest on appeal. None of the heavy metals do they excuse me not even on appeal but did they contest in the district court. All of that is waived. The only thing under biologically appropriate that remains in this case is pentobarbital and for that they lack article 3 standing. Now I'll take on the point about regrinds which Mr. Wexler devoted a sort of astonishing amount of time to. Regrinds first of all there's nothing in the complaint that alleges that they're not nutritious. That's a new new thing today which is exciting but inappropriate. Could you admit that they include food that had expired? Oh yes. So you're telling me your dog food is fresh. Would I reasonably believe that you're grinding up expired food and putting it in? Well so those are separate. I'm so sorry to talk across you. I think it's just the video but those are separate things. So regrinds are just kibble that didn't meet the sort of requirements when they were ground the first time so they grind them again. If anything it winds up adding nutritional value because you get more ingredients more meat ingredients in the bag but that's neither here nor there. Regrinds there's no allegation that we had a duty to disclose the use of regrinds or anything like that. Champion does not and this is uncontested. Champion doesn't count the regrind as a fresh ingredient. So when you see the meat math for example on those bags the regrinds aren't counting in the fresh part of that. They're counting in the non-fresh part. So we're not we're not cheating on that. That's the fact is that the bag discloses the existence of non-fresh ingredients and this gets to a more important point which is the other side tends to use fresh and regional. Standing alone and divorced from context but the lower court was correct and I really want to commend this court's attention. The song decision from Minnesota 2020 Westlaw 7624861 that's 7624861. We cite it in the briefs but the analysis there is terrific. The court goes through and explains how fresh and regional and we call it fresh and regional. I just did it myself as a sort of shorthand but what the bag actually says is statements like fresh regional ingredient commitment. That's at complaint paragraph 46. Focus on fresh ingredients complaint paragraph 51 and commitment. Our mission is clear and strong. That's at appendix 96. These go on for quite a while. I'm looking at a bag right now that says made with unmatched regional ingredients delivered fresh. Correct. So reading the bag as a whole the message is that they're committed to using fresh and regional ingredients which is a non-verifiable point that can't stay to claim and they do in fact use fresh and regional ingredients and there's no dispute on that either. So this is not like Bell. I mean one of the most important things to distinguish here is the Bell case. Bell is a hundred percent case. The package in Bell says 100 percent grated parmesan cheese. That's night and day from what we're dealing about in the present case. The present case is a made with case and actually the standard which we include in the definitions from the American Association of Food, AFCO, the regulatory body for this trade industry requires just three percent in order to claim made with and as you can tell from the meat math our product is way beyond that. The other side doesn't allege anything different but it is made with all of this and the package that your honor was reading I'm not exactly sure which of the many bags it is but they go through and they explain like on the lamb and apple this is a 13. Okay so is it the six fish lamb and apple? It doesn't particularly matter. I'm sure that it has the same breakdown across the various ingredients and so not only does the bag not purport to include only fresh or only regional ingredients it says that that is a commitment and a focus of Champion and then it in fact explains the many local ingredients or fresh ingredients that are included. There's nothing here that constitutes deception and the lower court was correct to say that a reasonable consumer would not find that this was act was would not find this misleading that this actually delivers exactly what's inside of it. As for the sort of new obligation to disclose certain items that are not fresh or not regional that is a novel legal theory. There's no requirement that if we say that this this includes some non-fresh ingredients that you have to list exactly what kind of non-fresh ingredients they are that they might be you know regrinds or reconstituted products of various sorts. There's no obligation to make that disclosure. The important thing is that Champion told buyers that they were buying products that included a large amount of fresh and regional ingredients consistent with their focus and commitment all of which is non-actionable. I think the court accurately dispatched with the notion of trusted everywhere and ingredients we love from people we trust. Those are particularly straightforward instances of sort of corporate optimism and puffery. As the lower court explained the bags make clear that that's true of most of the claims. In fact all of the claims that the other side raises and the only thing that wouldn't necessarily be a puffery point is the pentobarbital for which they lack standing. If you could pause there. They also allege that some of the food contained heavy metals which I think is sort of a separate focus from the pentobarbital. Can you respond to those portions of the complaint? Certainly. Heavy metals is again a waived component of biologically appropriate. The other side did not respond to our motion to dismiss on the subject of heavy metals. But there's no facts to support the claim that less heavy metals would be necessary. They don't allege anything about what the appropriate heavy metalness is for dog food because some of it occurs naturally. It's very widely known for example that fish includes heavy metals. In fact some fish pregnant women are advised not to eat precisely because of their high metal content. So the answer can't be no heavy metals. And the other side includes at the end of its at the end of its complaint. I think it might be exhibit two but I'm doing that from memory. A table that you know has heavy metal quantities for human consumption. What they don't include on that is the tolerable limit and how champions food is consistently below that. So there's no limit on what the appropriate amount of heavy metals would be. And the champion is somehow past that. So under Iqbal and Twadley there aren't allegations that would support a claim for heavy metals even if that were properly preserved. And it's not in this case. It's just you know that's a conclusive conclusively lead cause of action. Yes. And again many of these many of these arguments especially around heavy metals sort of veer into the arena of a negligence claim that that you weren't testing well enough or you weren't eliminating enough heavy metals. There's by the way no allegation that champion affirmatively adds any heavy metals or ad spenso or anything like that. It's it's it's really a negligence claim that's masquerading as a false advertising claim which is a pleading mechanism that this court should like the district court nip in the bud because that is an abuse frankly of of rule rule 12 if that's allowed to survive. If the court doesn't have anything further I'll make one one further point just to distinguish Bell that I wanted to get to which is the court there in the Second Circuit in the Mantecas case both point out that the rule they're announcing concerns very low cost items for which people don't take a look at the product packaging more thoroughly. And in this case we have a very high premium dog food so it's not like a few dollar carton of parmesan cheese or a box of crackers in the other case. This is something that that consumers actually spend some time on and if you're a serious enough dog owner that you would invest ninety dollars a bag in your dog's food it's not unreasonable to think that they would consider the bag as a whole. Not that that's a departure from precedent or a special rule because this court has explained as much in the Grossman decision and elsewhere that any claim of false representations from a supplier should be considered in their context. Well if you understand if you understand your customers being such a refined buyer why doesn't that impose a duty of disclosure on you relative to telling them that it includes certain kinds of things I mean heavy metals this these non-regional ingredients all those sorts of things and I'm focusing in particular on the notion of fraudulent admission and whether there's a duty to disclose that arises from your knowledge of the nature of your customer and this refined customer having certain refined expectations. So on the omissions theory I'll try to be as brief as possible so I see that my time is about to run out. You may respond to this question. Thank you. First of all the omissions claimed in this case are just the negative of the time to the statements. I'm saying there is a theory of fraudulent omissions that relates to the notion that one is aware of what their consumer would expect and therefore that imposes a duty upon them to disclose as opposed to the notion that you make affirmative misstatements and therefore have to fill the gap. Understood. I don't think that's alleged in this case but we would satisfy in any event for all the reasons that I've just given which include the fact that we provide a tremendous amount of information on this dog food bag that informs consumers about how much is fresh how much is raw what's regional that's already provided to our consumers and so I think we would satisfy even a more rigorous standard like that but again that's not really alleged in this case and one more time I'll commend song the song decision to this court's attention which explains that the alternative is a is a sort of rule that requires producers to enumerate everything that's included in the bag and everything that's omitted from the bag and that's really the only stop if this is allowed to go forward. All right counsel thank you your time's expired counsel are excused we appreciate your arguments this morning and the case shall be submitted.